UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CLETE ROBINSON,<br><br>　　　Petitioner,<br><br>v.<br><br>MITCH PERRY,<br><br>　　　Respondent. | Case No. 14-14168<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS [1], DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Clete Robinson was at a Detroit home when police executed a search warrant, finding marijuana and heroin. A Wayne County Circuit Court jury convicted Robinson on two possession charges, and he is serving a sentence of 6 to 20 years' imprisonment. Before the Court is his *pro se* habeas petition under 28 U.S.C. § 2254, which raises two claims: (1) insufficiency of the evidence, and (2) the trial judge abused his discretion by denying Robinson's request for a continuance on the trial's first day so that he could obtain new counsel. For the reasons that follow, the Court will deny the petition.

**I.**

A Detroit police "raid crew" executed a search warrant at a home on Mapleridge in Detroit on April 12, 2011. (R. 8-6, PID 243.) One of the officers, Neil Gensler, testified that as the crew ran up to the house yelling, "Police" and "Search warrant," he saw Petitioner Clete Robinson slam a kitchen stove shut and then slam the front door shut as well. (R. 8-6, PID 245, 253.) After the police forced open the front door, they found Robinson and his co-defendant, Zajuan Nenrod, in the kitchen and several others in the living room. (R. 8-6, PID 254–55.)

Officer Gensler opened the stove and found marijuana and what he believed was heroin. (R. 8-6, PID 256.) He also found a digital scale, some ziplock bags, and what appeared to be a "tally sheet" in the kitchen. (R. 8-6, PID 260–62.) Another officer, Maureen Whiten, found a plastic bag with suspected heroin inside the pocket of a coat hanging on the door knob of a bedroom. (R. 8-6, PID 311–12.) Subsequent analysis revealed that it was 68.14 grams of heroin, with an estimated street value of close to $70,000. (R. 8-6, PID 333–34.) In the same bedroom as the coat with heroin, police also found Robinson's birth certificate, photos of Robinson and Nenrod together, and documents connecting Nenrod to the home, including a utility bill. (R. 8-6, PID 324–30.) Police found other evidence connecting Robinson to the house: the key to the front door in his pocket. (R. 8-6, PID 324.)

A Wayne County Circuit Court jury convicted Robinson of possession with intent to deliver more than 50 but less than 450 grams of heroin in violation of Michigan Compiled Laws § 333.7401(2)(a)(iii) and possession of marijuana in violation of Michigan Compiled Laws § 333.7403(2)(d). The trial court sentenced him to 6 to 20 years' imprisonment for the heroin offense, concurrent with a 20-day sentence (time served) for the marijuana offense. (R. 8-8, PID 569.)

Following Robinson's conviction, he moved the Michigan Court of Appeals for a remand to the trial court under Michigan Court Rule 7.211(C)(1)(a) (which allows for certain pre-direct appeal remands) to explore a potential appellate claim that the trial court abused its discretion by not granting a continuance on the trial's first day so that Robinson could obtain substitute counsel or get more time for his existing counsel to contact a potential witness Robinson had asked him to call. (R. 8-8, PID 575.) (As the Court will discuss later, the witness was someone else who was at the home during the raid.) The Michigan Court of Appeals summarily denied the

motion for Robinson's "failure to persuade the Court of the necessity of a remand." (R. 8-8, PID 603.)

Robinson then appealed his conviction to the Michigan Court of Appeals, raising two claims: (1) the evidence was insufficient to prove that he constructively possessed the heroin found in the coat, and (2) the trial judge abused his discretion by not granting a continuance either to appoint new counsel or to allow Robinson's existing counsel time to investigate and prepare the potential witness. (R. 8-8, PID 607.) After consolidating Robinson's appeal with Nenrod's, the Michigan Court of Appeals affirmed Robinson's conviction in an explained decision. *See People v. Nenrod*, No. 308340, 2013 WL 6083721, at *1 (Mich. Ct. App. Nov. 19, 2013) (per curiam).

Robinson raised essentially the same claims in a *pro se* application for leave to appeal to the Michigan Supreme Court. (R. 8-9, PID 645.) The Michigan Supreme Court denied the application in a summary order because it was "not persuaded that the questions presented should be reviewed." (*Id.* at PID 640.) Robinson filed his federal habeas petition in October 2014, raising essentially the same claims again: (1) "Insufficiency of Evidence" and (2) "Abuse of Discretion" (again addressing the continuance and substitution of counsel issue). (R. 1, PID 4, 6.)

Robinson did not petition the United States Supreme Court for certiorari or file for state-court post-conviction relief. He asked this Court to stay his case so he could exhaust unspecified claims in state court, but the Court denied his request. (R. 12.)

## II.

As will be discussed, the Michigan Court of Appeals decided both of Robinson's claims "on the merits," so this Court's standard of review stems from the Antiterrorism and Effective

Death Penalty Act of 1996, which prohibits this Court from granting habeas corpus relief unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d).

### III.

### A.

Robinson first claims that the evidence at trial was insufficient to establish that he possessed 50 or more grams of heroin with the intent to distribute it. More specifically, he challenges the sufficiency of the evidence that he constructively possessed the heroin found in a coat in a bedroom. (*See* R. 1, PID 25–27.)

The Michigan Court of Appeals decided Robinson's claim "on the merits." The court discussed authority on the sufficiency of evidence and possession. *Nenrod*, 2013 WL 6083721, at *3. The court then noted the facts relevant to Robinson's possession of the heroin. First, "68.14 grams of heroin were discovered in a bedroom in the pocket of a coat hanging on a door." *Id.* at 6. Second, "In that same bedroom, the police found Robinson's birth certificate and several photographs of Robinson and Nenrod." *Id*. Finally, "At the time of his arrest, Robinson also possessed a key to the front door of the house." *Id.* As the Court concluded, "These facts, along with his closing the oven door, considered together and viewed in a light most favorable to the prosecution, were sufficient to enable a rational jury to conclude beyond a reasonable doubt that Robinson possessed the heroin found in the bedroom." *Id.* This Court finds nothing unreasonable about that conclusion.

To assess a sufficiency of evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The *Jackson v. Virginia* standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). What is more, the standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Given the Michigan Court of Appeals' "on the merits" determination, "the stringent and limiting standards of AEDPA" apply on top of the *Jackson* standard: this Court may disturb "a state court's decision that correctly identified and applied the controlling Supreme Court precedent only if the application of that precedent was objectively unreasonable, meaning more than incorrect or erroneous." *Id.* (internal quotation marks and citations omitted).

The *Jackson* standard "is applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law,'" so the Court will look to Michigan law on constructive possession. *See Lafler*, 658 F.3d at 531 (quoting *Jackson*, 443 U.S. at 324 n.16). Under Michigan law, "[a] person need not have actual physical possession of a controlled substance to be guilty of possessing it." *People v. Wolfe*, 489 N.W.2d 748, 753 (Mich. 1992), *amended* (Oct. 9, 1992). Possession can be "actual or constructive," and it can also be joint, "with more than one person actually or constructively possessing a controlled substance." *Id.*

(citations omitted). "The essential question is whether the defendant had dominion or control over the controlled substance." *People v. Konrad*, 536 N.W.2d 517, 521 (Mich. 1995).

Circumstantial evidence is enough to support finding possession, *see People v. McGhee,* 709 N.W.2d 595, 612 (Mich. Ct. App. 2005), and the prosecution presented plenty of circumstantial evidence here suggesting that Robinson possessed dominion or control over the heroin found in the coat. To be sure, the prosecution connected Robinson to the house where the heroin was found: Robinson was present at the time of the raid, he was seen shutting an oven door to conceal drugs in response to the raid, he had a key to the home's front door in his pocket, and pictures were found showing Robinson with Nenrod, who was otherwise connected to the house by a utility bill (among other things). Not only that, but the prosecution connected Robinson to the very room where the heroin was found: his birth certificate was there too. Based on that evidence, it was not unreasonable for the Michigan Court of Appeals to conclude that a reasonable jury could find that Robinson constructively possessed the heroin.

Accordingly, Robinson is not entitled to habeas relief for his first ground.

**B.**

Robinson's second claim is labelled "abuse of discretion." (R. 1, PID 6.) He contends that the trial court erred by denying his request for a continuance on the first day of trial so that he could either obtain new counsel or give his current counsel an opportunity investigate and explore the possibility of presenting testimony from a witness that Robinson had asked him to contact. (R. 1, PID 28.)

In his direct appeal to the Michigan Court of Appeals, and here in his habeas petition, Robinson has maintained that when he asked for a continuance, he was asserting two constitutional rights: his Sixth Amendment right to the effective assistance of counsel and his

"right to call witnesses in his own defense." (*See* R. 8-8, PID 619; R. 1, PID 28.) So contrary to Respondent's assertions, it does appear that Robinson—both here and in state court—at least to some extent presented this claim as a constitutional one. (*See* R. 7, PID 68–69.)

By way of background, when Robinson requested the continuance on the first day of trial, he raised two issues. First, he complained about communication issues with his attorney. For instance, Robinson said that he had difficulty reaching his attorney and that he had left a voicemail asking him to contact a potential witness, but counsel never did. (R. 8-6, PID 153.) Second, he suggested that his counsel was unprepared. In particular, Robinson claimed that he had just overheard his counsel mistakenly saying Robinson was facing a cocaine charge, not a heroin one. (*Id.*) After further colloquy with the court, the trial judge said that he would not allow for substitution of counsel "on the day of trial." (R. 8-6, PID 156.) For his part, Robinson's counsel maintained that Robinson did not respond to his request to provide the names and contact information for potential witnesses. (R. 8-6, PID 156.)

The Michigan Court of Appeals found that the trial court did not abuse its discretion by denying Robinson's request for a continuance. The court began by discussing the applicable standards under Michigan law for reviewing trial court denials of requests for continuances, along with the standards for a defendant's entitlement to the appointment of substitute counsel. *See Nenrod*, 2013 WL 6083721, at *7. While the court did not expressly couch its holding in constitutional terms, the court did find that Robinson failed to demonstrate any prejudice relevant to the two constitutional components of his claim. For instance, the court noted that Robinson had "not indicate[d] what outcome-determinative action defense counsel could have taken if he had more time to prepare." *Id.* As for Robinson's claim surrounding the potential witness, the court observed that Robinson "has not established that the proposed witness would have actually

testified as Robinson claims, or shown that his testimony would have made a difference in the outcome of the trial." *Id.* at *8. Overall, the court concluded that because Robinson was "unable to show either good cause or actual prejudice, . . . the trial court did not abuse its discretion by denying Robinson's requests for an adjournment and substitute counsel." *Id.* Thus, to the extent that Robinson has made a federal constitutional claim, the Court will presume that the Michigan Court of Appeals decided the claims "on the merits," as Robinson has not urged otherwise nor pointed to anything rebutting that presumption. *See Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.").

To the extent that Robinson challenges the trial court's refusal to grant a continuance so that he could obtain substitute counsel, the Court notes that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Courts reviewing substitution of counsel denials generally consider "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client." *See*, *e.g.*, *Martel v. Clair*, 565 U.S. 648, 663 (2012).

In light of those factors, the Michigan Court of Appeals' decision was not objectively unreasonable. The Court noted that Robinson had been "dilatory in waiting until the day of trial to request new counsel." *Nenrod*, 2013 WL 6083721, at *8. As the court observed, while Robinson claimed that he did not raise the issue at a final pretrial conference because he was ordered to take a drug test, that still left him with three weeks to raise the issue before trial. *Id*.

8

But he waited until the day of trial. Furthermore, the record reveals that the trial court made adequate inquiry into the reasons underlying Robinson's request, something he has not disputed here or in his direct appeal. Finally, the trial court reasonably concluded that Robinson's trial counsel's alleged lack of preparation was insufficient to justify adjourning the trial:

> [T]here is no record that defense counsel ever indicated that he was unprepared for trial or needed more time. To the contrary, counsel appeared to be fully aware of the facts of the case, which were not overly complex, and advised the court that he was ready to proceed. Although defense counsel referred to the charged offense as possession of cocaine, rather than possession of heroin, the trial court correctly explained that the apparent misstatement did not indicate unpreparedness because charges for possession of heroin and possession of cocaine were ostensibly the same, i.e., possession of a controlled substance.
>
> Robinson acknowledged talking on the phone to counsel before trial and in person on the day of trial. Again, the record discloses that counsel was familiar with the facts of the case. During trial, defense counsel thoroughly cross-examined police witnesses about Robinson's lack of connection to the drugs and the house, discussed the police's handing of the evidence, and brought up the other four men in the house. In closing argument, counsel continued to highlight the lack of evidence connecting Robinson to the drugs. Moreover, other than the alleged failure to contact a prospective defense witness, Robinson does not indicate what outcome-determinative action defense counsel could have taken if he had more time to prepare.

*Nenrod*, 2013 WL 6083721, at *7. This was not unreasonable. And Robinson does not point to any clearly established law to suggest otherwise.

To the extent Robinson challenges the trial court's refusal to grant a continuance so that his counsel could investigate and possibly prepare a potential witness, in general "broad discretion must be granted trial courts on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Still, the denial of a motion for a continuance can carry constitutional implications. *See Franklin v. Bradshaw*, 695 F.3d 439, 452 (6th Cir. 2012). But to warrant habeas relief, Robinson "must show that the trial court's decision embodied an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Esparza v.*

9

*Sheldon*, 765 F.3d 615, 624–25 (6th Cir. 2014) (internal quotation marks and citations omitted). "And he must show that the decision resulted in actual prejudice to his defense," meaning the continuance "would have made relevant witnesses available or added something to the defense." *Id.* at 625 (citation omitted).

Robinson has not shown prejudice. The Michigan Court of Appeals' holding on this issue was again reasonable:

> Robinson identifies the previously unnamed defense witness as Willie Sistrunk, one of the men present in the house at the time of the raid. According to Robinson, Willie Sistrunk would have testified that the drugs belonged to Nenrod only, and that Robinson was in the living room at the time of the raid. During trial, however, defense counsel argued that the drugs did not belong to Robinson, and Benjamin Sistrunk testified that both Robinson and Nenrod were in the living room at the time of the raid. More importantly, in an affidavit attached to Robinson's motion to remand as an "offer of proof," appellate counsel averred that he had tried to speak with Willie Sistrunk, "but he has not yet returned [his] messages." Thus, Robinson has not established that the proposed witness would have actually testified as Robinson claims, or shown that his testimony would have made a difference in the outcome of the trial.

*Nenrod*, 2013 WL 6083721, at *7. Robinson still has not shown that Sistrunk would have actually testified. Nor has he provided any affidavit from Sistrunk confirming Robinson's unsupported assertions about what that testimony would have been. So to the extent Robinson claims that his counsel's failure to contact this witness contributed to his alleged lack of preparation justifying the continuance, on this record, Robinson cannot show prejudice. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) ("This Court has held that a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.").

Accordingly, as Robinson is not entitled to habeas relief for this claim.

### IV.

For the foregoing reasons, the Court DENIES WITH PREJUDICE Robinson's petition for a writ of habeas corpus (R. 1).

In order to appeal the Court's decision, Robinson must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks and citation omitted). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901–02 (6th Cir. 2002) (per curiam).

Here, jurists of reason would not debate the Court's conclusion that Robinson has not met the standard for a certificate of appealability because both of his claims are devoid of merit. Thus, the Court DENIES a certificate of appealability.

Finally, the Court will GRANT permission to appeal *in forma pauperis*, because an appeal of this decision could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: July 19, 2017

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 19, 2017.

                                                  s/Keisha Jackson
                                                  Case Manager